Good morning, Your Honor. May it please the Court. This case is really about the appellant's, Mr. Fairbourn's, denial of an impartial jury and denial of a Sixth Amendment right to an impartial jury. The question that you presented to Your Honor in this court is whether the denial of an impartial jury constituted the structural error of the third kind enunciated by the Supreme Court in Weaver, that is, that would automatically result in reversing your position that in all cases where a juror was formally represented by the prosecutor that there's an implied bias claim. That's a fair question. I think probably yes. I think the answer to that is yes, but I think we have more facts here than that. Okay, let me ask you something else. So if we, if the claim of bias is that it's implicit, that it's implied, is it subject to being rebutted in a habeas hearing? Arguably so. I mean, this claim in this case is that you have redefined actual bias to include actual bias where the implied bias, they used the word, the term, or this court used the term actual bias, and I don't know, I don't know if it can be rebutted. It can be not proven, I think. Well, you, I mean, you don't, under your position, you don't have to prove it, right? All you have to do is show that he represented him and he thought he did a fair job and there was some trust because of the relationship, and then you win. I think that's fair, but you do, that is the showing, I think, that you have to make, is that he did, or he or she represented the juror. Because in the case of an attorney, unlike the other cases of this court in his review, in the case of an attorney, that relationship is ongoing and was ongoing at the time of trial. Not only did he represent him once, he represented him twice, and that, the duties of the attorney to the client continue beyond the end of the whatever case, and we don't know, whatever case the prosecutor represented the juror. What if in this case, at the habeas hearing, the juror was called to the stand and you said, were you satisfied with Mr. So-and-so's representation? And they said, no. In fact, I didn't think he was very good. I did 30 days on that charge, and I felt like we had a lot better defenses than he put up. And, but at the same time, the lawyer is still, has all the same badges that you're talking about, where he still owes the duty of confidentiality and can't breach the client confidences and things like that. Yeah, I think maybe you probably just shot a good hole in my contention that it was, it would always be implied bias, because if it's clear that the juror was dissatisfied with the prosecutor, there's no bias in favor of the prosecution against the defendant, so the defendant wouldn't have a claim of implied bias. Yeah, I guess my, let me tell you what my problem is, see if you can, and then I'll leave you alone and let the other judges ask some questions if they want, is, as I read the record, what we have here is a situation where somebody was basically satisfied with their lawyer, but they had no interaction with him over the years since representation. They testified at the habeas hearing that they didn't give him any head start because of it, that they separated what happened with their lawyer years ago from their duty as a juror, which they knew they had to put that aside and decided on the evidence. And then you have trial counsel saying, yeah, I was aware that he had represented him, and I made a conscious decision to keep him because I thought he was fair. There were other people who knew him. I struck them because I didn't think they could be fair, but this guy, I thought he could be fair. And so, I mean, I think before we ever get even to any of these other questions, you have to do something to show that you actually have a bias claim. I think in this case, what we have is the juror. I mean, in every case, the juror is going to get up, and that's the implied bias case, is the jury is going to get up and say a motion for a new trial, or however it's brought up, that they were not biased in favor of the prosecution. So that's a given in every implied bias case. But in this case, the juror acknowledged that he represented him twice, and also that there was a built-in trust that he had for this prosecutor. And I think that's what brings this one over the line, is he said, I trusted him, that I had a built-in trust of him because he was my attorney. And I think that does make this an implied bias case. I think it brings it beyond, I think there's a recent case, what is the name of that? The false versus Wyoming Department of Corrections case, which was decided, I think, a week ago, or less than a week ago, by this court, where there was a juror who was married to a legal secretary in the prosecutor's office. And this court decided that wasn't enough. This, I think, where the juror was actually represented by the prosecutor is over that line. Let me ask you, as I read your brief, you do not challenge the district court finding that there was no bias here. So your claim before us is simply a legal claim that it's structural error, and you don't have to get to the second strickland prong. Is that correct? So if we disagree with you and say that under Weaver, because you didn't preserve this and you're doing it around the corner in an ineffective assistance claim, you must meet both prongs of strickland, then you lose, right? And you haven't given us a separate argument about whether you could meet that prong, which the district court held you couldn't. Right. I think you've said that we didn't have to prove actual bias. You mean actual prejudice, right? Prejudice. Yeah. And you're arguing to us that I didn't have to show any prejudice, which here, you know, the prejudice would be reliant on bias. Right. The district court found no prejudice. Here, all you're arguing is that it's structural error. I don't even have to try to prove that prong. That is our argument, is under Weaver, that this sort of… Well, I don't read Weaver as you read Weaver. I think Weaver very clearly says that if you don't preserve it and you're bringing it as an IAC claim, that you do have to prove both prongs. Now, Weaver is, of course, an open courts case, and I guess you could argue that it may or may not apply to other instances of structural error, but that would mean that it's not clearly established. So I have a hard time understanding how Weaver helps you. Well, I think this court in Meadows read Weaver to leave open the possibility that you could prove structural error a third time because Weaver didn't address it, Meadows didn't address it. And yes, we are asking you to interpret Weaver and also this court's decision in Meadows that an error that goes to the fundamental right to an impartial jury into a fair trial is the third type of structural error. So if it results in automatic reversal, whether or not it was raised, our argument is that we should be able to bring it as an ineffective assistance to counsel claim. So your characterization of the argument is correct, but I disagree that Weaver foreclosed the possibility that we're arguing here that the third type of structural error that results in automatic reversal was foreclosed by either Weaver or Meadows. And let me, one more question, and then I'll stop picking on you. You argue in your brief a chronic argument, but there's no certificate, you didn't get a certificate of appealability on that, so we can't, and you didn't ask us to expand, so we can't entertain that, can we? No, that is correct. The state, we argued in our opening brief, the state pointed out that it's not with certificate of appealability, and I have to concede that it was not with certificate of appealability. So that argument is not for the court. Okay, thank you. Okay, my turn. Your turn. Thank you, thank you. We're here on 2254 claim, right? Yes. And the state court, the Wyoming Supreme Court, decided this issue. So your burden is to show that it unreasonably applied Supreme Court law. Right. So you're arguing this is a structural error, and the Wyoming Supreme Court erred in not treating this as a structural error and looking at prejudice. Correct. But you have to show that their error in not finding this to be a structural error was pretty well established by the Supreme Court. And generally, we look at the specific facts of earlier cases and see if there's some case like this decided by the Supreme Court. And I don't think they've decided one like this, where the person, the defendant, I'm sorry, where the juror was represented by the prosecutor a couple decades earlier. Doesn't that foreclose your argument? How do you overcome that problem? No, I don't think it does. We're arguing there's sort of two avenues that we think that the Wyoming Supreme Court erred in. One is there's clear Supreme Court precedents that a defendant is entitled to a partial jury. But the Supreme Court has made it pretty clear that that's sort of a broad statement. The Supreme Court has made it clear that a defendant is entitled to the effective assistance of counsel. But you've still got to have cases pretty close in point before you can overturn it under 2254D. Right. So where's the impartial juror decision by the Supreme Court that is so clearly violated by the Wyoming Supreme Court? Well, in the Woods case, in the whole line of Supreme Court cases, the talk about whether in this court's cases, as well interpreting the Supreme Court cases, is where a juror has a connection to either a party or a player, a key player in either side. But in this case, it would be on the prosecution. Well, convincingly, it's unreasonable for the Wyoming Supreme Court to think, yeah, he had a relationship 20 years ago.  It strikes me as different. Maybe I'm being unreasonable about this. And maybe it was an error by the Wyoming Supreme Court to not find this relationship should be disqualifying of the juror. But that doesn't strike me as obviously wrong. What am I missing? You really need to give a case that's pretty close in point, and I don't see it. Well, there are a few Supreme Court cases that actually address something like faith or something like that, impartial jurors on any particular facts. And that makes your job harder. It does. But in this case, and in the Supreme Court cases, they have made it clear that where there is a connection, and this court's then interpreted what that connection has to be. In the recent case, it wasn't enough. There were verdicts for legal secretary at the prosecutor's office. But in this case, it's, I think, so obviously, well out beyond what should happen. And this is the jury foreman. He claimed that there was the built-in trust that he had with the counsel. It wasn't just that he represented him. And I think the facts here would make clear, frankly, why I don't know why the prosecutor didn't just have him stricken or agree to have him stricken. Because I think it taints the whole idea of an impartial juror when you have somebody who's represented by a jury. Well, you're saying the prosecutor didn't, but the defense counsel didn't move to have him stricken. Right, right. Well, that's our point. Yeah. And maybe as Judge Carson was pursuing with you, the defense counsel thought, I think this guy can be fair-minded. I mean, he was represented when he was a defendant in a criminal action. Maybe that would make him more sympathetic to a defendant in the case, because he's been there, done that. So there are things to weigh. Go ahead and wrap up very quickly, because you're tied up. Well, as far as the facts go, this particular, I think, attorney, the trial attorney, didn't know, or didn't recall, why he didn't strike this juror, and why he sort of engaged in the prosecutory. He didn't have the recollection, at least on the record we have, he didn't have the recollection of why he did this particular juror one way or the other. Thank you. Thank you. Ms. Jones? May I proceed? May it please the Court. My name is Kristen Reeds-Jones, and I represent the Wyoming Attorney General and the Wyoming Warden in this matter. The Wyoming State Courts found that the juror in this case was not biased as a matter of fact or as a matter of law. The District Court found that that decision was not contrary to or an unreasonable application of controlling federal law. And as this Court has identified, we're here under Section 2254D. Mr. Fairbourn has the burden of showing that the State Court decisions were contrary to or an unreasonable application of federal law established by the Supreme Court. He concedes that if he can't point to clearly established federal law, that's going to doom his petition. And he also acknowledges that habeas review is not an appropriate avenue to introduce a new rule or extend existing rules to novel contexts. Nevertheless, his petition falls into both of those traps, and that's why this Court should affirm the District Court finding. Mr. Fairbourn is first asking this Court to set aside the significant deference owed to State Courts in federal habeas review. Then he's asking you to set aside the facts of the case, as found by the State Courts and the District Court. Then he's asking you to establish new rules which have not been clearly established yet by the U.S. Supreme Court. And then, of course, he's asking you to apply those rules retroactively to the facts of his case. Bottom line is, if this Court follows his approach, this Court has to first presume deficient performance, then presume prejudice for him to prevail under Strickland. But he's also asking this Court not to apply Strickland because he realizes he cannot prevail using the Strickland standards. The District Court certified these two interrelated issues. First, whether Mr. Fairbourn does have to affirmatively show prejudice under Strickland. And then, if this Court were to get to the next prong of Strickland, what standard of review would apply? Whether or not this Court would take up part of the Strickland test to no vote? Essentially, Fairbourn is challenging the State Court decisions, but asking this Court to take an entirely different path to consider the merits. I mean, don't we consider the last State Court decision? Your Honor, I think that's true. However, you consider the last State Court decision on the claim. Ineffective Assistance Counsel is a single claim which is tested using a two-part test. Mr. Fairbourn is trying to split the ad in here and say, well, we have a prejudice claim and a performance claim, but that's not the case. We have a single claim, and the State Courts absolutely did address that claim. So, what we have is a two-part test where both elements have to be met to prevail. But, as I recall, the earlier State Court decision addressed both prongs, but the Supreme Court decision addressed only one prong. That's correct, Your Honor. And so, I think what my colleague is getting at is we look to the last reasoned decision, which would be the Supreme Court decision. Can we then reach back to the prior decision? And there is a split in the circuits about that. And we seem to be articulating our test as last one. Your Honor, I would agree that you're looking at the last State Court decision on the claim. And with Strickland, you know, there's some nuances here because the Federal Courts and the U.S. Supreme Court has said time and again the State Courts should decide Strickland on a single prong if they can. And I use the word should because the U.S. Supreme Court used the word should in Strickland. The Court expressed concern that these sort of IAC claims are going to overtake the criminal system and courts, State Courts, should dispose of them efficiently by addressing a single prong. So, for the Federal Courts to now turn around and not give any deference, it really creates some tension with what the Supreme Court announced in Strickland. It creates some tension even with Weaver, which talked about the fact that IAC claims are going to become a way around waiver and forfeiture of appellate claims. So, what the State is advocating here is that if this Court were to differ with the District Court, determine that there was prejudice, this Court would then look to the other prong, the performance prong. The State advocates that this Court should look through to the lower State Court because that lower Court made factual findings. And under NPDEFERENCE, the Federal Courts are careful to defer to the State Court proceedings. Do you have a case from our circuit where we looked through to the District Court decision where the appellate decision was more summary and unreason? Not specifically on a Strickland claim. The look-through doctrine doesn't exactly fit the position we're in today. But this Court would apply the look-through doctrine if, as you said, there's just a case at the Wyoming Supreme Court. This Court would look through to what the lower Court had decided under the understanding that the Wyoming Supreme Court had adopted that reasoning. And again, the case today is a little different. The Wyoming Supreme Court summarizes the District Court decision on both prongs. It says, we agree. Then it goes on to do its own analysis, focusing only on the prejudice prong. But I liken the case today to an Eleventh Circuit case called Hammond, in which the Georgia Supreme Court didn't do the two-prong analysis, but also didn't disagree with the lower court analysis. Hammond described this as taking the easier route. And not in the pejorative sense. This is what Strickland says should happen. You see, at one point you said the trial court in Wyoming, I want to distinguish between District Court, which I assume you're talking about, the Federal District Court. The trial court in Wyoming, you said we should defer to its factual findings. And maybe that's what we should do under 2254E, is it? Yes, Your Honor. But what factual findings did it make with respect to deficient performance, as opposed to just evaluating the performance based on undisputed facts? Your Honor, the trial court held an evidentiary hearing after trial under our Rule 21, which is a motion for new trial based on ineffective assistance. And the focus at that hearing was this potentially biased juror. So the trial court heard from the juror, and the attorneys were able to ask follow-up questions to get more information about that 19-year-old representation. But at that hearing, Mr. Fairbourn's two trial attorneys also took the stand. So they were able to describe the strategic decisions that they had made during the one year. But they didn't have any recollection of what that strategic decision was with respect to this particular juror, isn't that right? No, Your Honor. They did testify specifically that they recalled this gentleman, that he was forthcoming, that he struck them as honest, and that based upon the number of peremptory strikes they had, they had very problematic jurors. There were three jurors. Yes, there were 10 that knew the prosecutor, right? There were 11, Your Honor. Eleven? Okay. So of a panel of three, four, 11 people knew this prosecutor. Their children currently played sports together, current family friend, teacher from high school, high school classmate, a gentleman whose brother had worked for the prosecutor. Were any of these stricken for cause by the trial judge? No. None of them were stricken for cause because none of these relationships under Wyoming law or under any federal law that Mr. Fairbourn can point to would allow for a for-cause strike. The only way to take them off would have been peremptory strikes. Eight of those 11 were struck, but three of those folks that knew the prosecutor made it to the trial jury. One of them had a current relationship. I think their children played sports together, and they knew each other in the community. We're focused all of this on whether there was prejudice under Strickland. I don't know that we even get there because, as I read the briefs, there's no challenge to that finding in the state court. The only argument before us is that you shouldn't look at prejudice at all because it's structural and I don't have to meet the Strickland standard. So if we disagree with that and say, yes, you do have to meet the Strickland standard, aren't we done? Yes, Your Honor, you are. In fact, that's why the district court never got to this second issue. It said, because I've decided the first issue, because the Wyoming Supreme Court was correct, we don't have to talk about the performance problem. Well, and that may be true of the court and what it did, but what I'm talking about is the appellant has not challenged the prejudice finding below. And so, you know, it seems to me we have a pure legal issue here. Is it structural or do you have a Strickland test? I agree, Your Honor. It's a purely legal issue and it's a purely hypothetical issue. We are at the top of the house of cards having skipped the first few floors. Even if this court were to decide that, yes, hypothetically, we will answer the unanswered question from Weber. If this court were to say that this type of structural error does not have to be preserved at trial, it can be raised on collateral review and reversed, we still haven't sort of met those prerequisites, which is showing that the juror was biased, showing that a single biased juror is structural error, showing that this is the type of structural error that would fall into that Weber category, and then finally determining that Weber was the controlling law. I think there's something even more fundamental than that here, and I want to return to 2254, because if the Wyoming Supreme Court decided this on the ground that there was no prejudice, it had to implicitly have decided that it's not structural error, and therefore our scope of review is whether it was contrary or an unreasonable application of Supreme Court decisions, Supreme Court holdings, for it to find that this is not structural error. And so our issue really isn't whether it's structural error, it's whether it was unreasonable to reject a claim that it's structural error. I agree, Your Honor. The arguments are very circular, and they always bring us back to 2254d. Whether the Supreme Court wasn't merely wrong, but whether their decision is contrary to or unreasonable application of controlling federal precedent. The controlling federal precedent here is Strickland. It's not Weber. Weber did not hold in Strickland. Weber repeated and re-emphasized the holding in Strickland. The court actually applied the Strickland two-part test to Mr. Weber and required Mr. Weber to affirmatively show material prejudice. So for the Wyoming Supreme Court to rely on Strickland, given the Strickland chronic Weber family of cases, was not contrary to federal case law, and it was not an unreasonable application of the holdings in Strickland, because Strickland is the law. It was not modified by Weber in any sense. If you have some time, you don't have to use it. Yeah. If there are no further questions, the state would ask that this court affirm the district court. Thank you. Thank you, counsel. Cases submitted and counsel are excused.